UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN WILLIAM WAGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15-CV-01277-JAR |
| ) | |
| JAZEALL BROWN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Jazeall Brown, Janice Fairless, Laverta Barnes, and Louisa Lyles' Motion for Summary Judgment (Doc. 83). The Motion is fully briefed and ready for disposition. Also before the Court is Plaintiff Benjamin William Wagner's pro se Motion for Return of PLRA Filing Fee (Doc. 96). For the following reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Return of PLRA Filing Fee.

**I. Background**

On August 18, 2015, Plaintiff, a Missouri inmate, filed this action under 42 U.S.C. § 1983 against Defendants in their individual and official capacities (Doc. 1). His complaint, as amended, alleges that Defendants impermissibly restricted his access to incoming and outgoing non-legal mail between July 16, 2012 and March 7, 2013, while he was incarcerated as a pre-trial detainee at the St. Louis City Justice Center ("SLCJC") (Doc. 51). For relief, he seeks damages and a declaration that Defendants violated his rights under the First Amendment to the United

States Constitution (Id. at 12).[1] Defendants now move for summary judgment (Doc. 84). Plaintiff has filed a response (Doc. 87), and Defendants have replied (Doc. 89).

The summary judgment evidence establishes the following.[2] Plaintiff was held at the

---

[1] Even liberally construed, Plaintiff's amended complaint did not assert a due process claim based on Defendants' failure to give him notice that they were intercepting his mail and forwarding it to the Circuit Attorney's Office. Brooks v. Roy, 776 F.3d 957, 959-60 (8th Cir. 2015) (to state a claim under § 1983, a plaintiff must include in his complaint either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory); see Bonner v. Outlaw, 552 F.3d 673, 676-78 (8th Cir. 2009) (citing Procunier v. Martinez, 416 U.S. 396, 417 (1974)) (discussing due process violations arising out of officials' failure to notify inmate that his incoming mail had been returned; inmates have a liberty interest in uncensored communication which is protected by the due process clause). In his response to Defendants' summary judgment motion, Plaintiff alleges for the first time that Fairless violated his due process rights by intercepting his mail in violation of rights afforded him by the SLCJC's inmate mail policy (Doc. 87 at 4). In reply, Defendants argue that a violation of the jail's policy cannot give rise to a due process claim (Doc. 89 at 3). To the extent such a due process claim is properly before the Court, Defendants are entitled to summary judgment, as noncompliance with SLCJC's policy for processing inmate mail is insufficient to support a due process claim. See Phillip v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (citing Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996)) (there is no federal constitutional liberty interest in having prison officials follow prison regulations).

[2] The facts are taken from Defendants' Statement of Uncontroverted Material Facts (Doc. 84.1). With respect to summary judgment motions, Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of his failure to specifically dispute Defendants' material facts, other than to deny that he actually corresponded with his alleged victims or received any inappropriate photographs during his incarceration at SLCJC (Doc. 87 at 4-5, 7), Plaintiff has not

SLCJC from approximately December 20, 2011 to March 10, 2014, while he awaited trial in the St. Louis City Circuit Court on various charges arising out of his alleged sexual assaults of several minor children (Doc. 84.1 at ¶¶ 1-2).

Brown was a receptionist at the SLCJC (Id. at 4). Her job responsibilities did not include delivering mail to inmates; instead, her duties included sorting all of SLCJC's incoming mail and forwarding the inmate mail to Fairless (Id. at ¶¶ 5-6). Fairless was a clerk in the SLCJC mailroom; her job duties included sorting inmate mail and forwarding any inmate mail that was under subpoena to Lyles (Id. at ¶¶ 7-8). Lyles, a correctional officer at SLCJC, was responsible for handling responses to subpoenas (Id. at ¶¶ 9-10). Barnes was an administrative assistant at SLCJC. She was not involved with any aspect of SLCJC's inmate mail service, did not supervise any mailroom workers, and did not order anyone to withhold Plaintiff's mail (Id. at ¶¶ 11-13). Barnes, Lyles, Fairless, and Brown did not have authority to make SLCJC policies (Id. at ¶ 14).

According to Defendants, during routine processing of Plaintiff's mail, SLCJC officials discovered that Plaintiff was corresponding with his alleged victims and receiving "potentially inappropriate photographs." (Id. at ¶ 15). SLCJC employees reported this activity to the St. Louis

---

met the requirements of Local Rule 4.01(E), and is deemed to have admitted all other facts set forth in Defendants' Statements of Uncontroverted Facts. See Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp. 2d 1166, 1168 (E.D. Mo. 1999)). However, Plaintiff's failure to respond properly to Defendants' motion does not mean summary judgment should be automatically granted in favor of Defendants. The undisputed facts as alleged by Defendants still must establish that they are entitled to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

In addition, the Court has construed Plaintiff's amended complaint as verified and all his statements and affidavits as though they were sworn under penalty of perjury (Docs. 92-94). See Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 682 (8th Cir. 2012) (a verified complaint is equivalent to an affidavit for summary judgment purposes). Nevertheless, Plaintiff has not created a genuine dispute as to any material fact.

Circuit Attorney's Office (Id. at ¶ 16). Plaintiff denies that he had any correspondence with his alleged victims or that he received any inappropriate photographs during his confinement at the SLCJC (Doc. 87 at 7).

On or about July 17, 2012, SLCJC officials received a subpoena *duces tecum* directed at Lyles (Id. at ¶ 17). The subpoena was issued by a detective at the Circuit Attorney's Office and stated the following:

> You are hereby commanded, that, setting aside all manner of excuse and delay, you be and appear before our [St. Louis City Circuit Court] on the 17th day of July, 2012 at 9 a.m. and speak the truth, in a certain cause pending in our said court, where in the State of Missouri is the Plaintiff and, Benjamin Wagner, Defendant, on the part of the STATE OF MISSOURI. You are further commanded to testify to records in your possession or provide information relative to: **Incoming and outgoing mail for [Wagner] for mail received or sent out by defendant Benjamin Wagner, while confined at the St. Louis City Justice Center.**

(Doc. 84.1 at ¶¶ 17-18; Doc. 84.10).

Fairless and Lyles believed that the subpoena was valid and that they were required to comply with it (Id. at ¶ 26). Believing that the subpoena required her to give all of Plaintiff's non-legal incoming and outgoing mail to the Circuit Attorney's Office, Lyles directed Fairless to sort Plaintiff's mail and forward it to the Circuit Attorney's Office (Id. at ¶¶ 20-21). Between July 17, 2012 and March 7, 2013, all of Plaintiff's incoming and outgoing non-legal mail was redirected to the Circuit Attorney's Office; none of his legal mail was interrupted (Id. at ¶¶ 22-23). On March 7, 2013, the Circuit Court ordered the Circuit Attorney to return all of Plaintiff's mail that it had received pursuant to the subpoena, and directed the SLCJC to stop intercepting Plaintiff's mail (Id. at ¶ 24; Doc. 84.2 at 12). After March 7, 2013, none of Plaintiff's mail was redirected to the Circuit Attorney (Doc. 84.1 at ¶ 25). At all relevant times, the SLCJC had a

policy relating to the processing of inmate mail; however, the policy did not set forth any procedure for processing inmate mail that is subject to a subpoena (Id. at ¶¶ 27-28). On February 27, 2014, Plaintiff was convicted on thirteen felony counts—including forcible rape, statutory rape, forcible sodomy, statutory sodomy, and child molestation—and two misdemeanor counts after he entered guilty pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970) (Docs. 84.1 at ¶ 2; 84.2 at 1-9).

## II. Summary Judgment Standard

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014). A moving party bears the burden of informing the Court of the basis of its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

**III. Plaintiff's Claims against Brown and Barnes in their Individual Capacities**

Defendants Brown and Barnes argue that they are entitled to summary judgment because they did not participate in the interception of Plaintiff's mail (Doc. 84). In his response, Plaintiff does not dispute that Brown and Barnes were not involved in intercepting his mail (Doc. 87). "'[L]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.'" Turner v. Mull, 784 F.3d 485, 493 (8th Cir. 2015) (quoting Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990)). The undisputed facts establish that neither Brown nor Barnes was directly involved in the interception of Plaintiff's mail. Brown was a receptionist at the SLCJC, and while her job responsibilities included sorting all incoming mail and forwarding inmate mail to Fairless, her duties did not include delivering mail to inmates. Barnes, who was an administrative assistant as SLCJC, was not involved with any aspect of SLCJC's inmate mail service. She did not supervise any mailroom workers and did not order anyone to withhold Plaintiff's mail. The Court will grant summary judgment in favor of Brown and Barnes in their individual capacities because it is undisputed that they were not personally involved in the interception of Plaintiff's mail while he was incarcerated at SLCJC. See id.; Peterson, 754 F.3d at 598.[3]

**IV. Plaintiff's Claims against Lyles and Fairless in their Individual Capacities**

Lyles and Fairless argue that they are entitled to summary judgment on Plaintiff's claims against them in their individual capacities based on qualified immunity (Doc. 84). More

---

[3] Barnes and Brown also move for summary judgment based on qualified immunity. The Court notes that, to the extent they may have participated in the interception of Plaintiff's mail, Barnes and Brown would nevertheless be entitled to summary judgement based on qualified immunity, for the same reasons that Lyles and Fairless are.

specifically, they assert that they did not violate any clearly established statutory or constitutional rights of which a reasonable official would have known by temporarily intercepting Plaintiff's mail because they acted in response to a valid and enforceable subpoena issued by the Circuit Attorney's Office (Id. at 3-6).

In response, Plaintiff argues that the subpoena expired on July 17, 2012, the date on which it directed Fairless to testify or produce documents relating to his mail, and that therefore the subpoena cannot justify Defendants' continued interruption of his mail beyond that date. In support of his argument, Plaintiff cites to Mo. Rev. Stat. § 491.100(2), which authorizes Missouri circuit courts to order a witness who has been subpoenaed to testify at trial to "appear from time to time until the case is disposed of or he is otherwise excused by the court."[4]

"Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mallak v. City of Baxter, 823 F.3d 441, 445 (8th Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In deciding whether a government official is entitled to qualified immunity, the Courts must consider a two-party inquiry: "whether the facts alleged or shown, construed most favorably to the plaintiff[], establish a violation of a constitutional right," and "whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013).

---

[4] See Mo. Rev. Stat. §§ 491.090 (procedures for issuance of trial subpoenas), 491.100(2) (the circuit court may order witness subject to such subpoenas to appear from time to time until the case is disposed of or the witness is otherwise excused by the court); see also Mo. Rev. Stat. § 491.100(3) (procedures for quashing subpoenas *duces tecum*).

"A prison inmate retains those First Amendment rights that are not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Yang v. Missouri Dep't of Corrs., 833 F.3d 890, 894 (8th Cir. 2016) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)); see also Turner v. Safley, 482 U.S. 78, 89, 99 (1987); cf. Williams v. McClain, 708 F. Supp. 1086, 1089 (W.D. Mo. 1989) (applying reasoning of Procunier and Turner to pre-trial detainee's mail claims). "These include the right to communicate with persons outside the prison walls, subject to regulation that protects legitimate governmental interests." Id. (citations omitted). While pre-trial detainees retain a First Amendment right to receive non-legal mail and photographs, that right is not absolute. Yang, 833 F.3d at 894; Mumit v. Lay, No. 2:16-cv-00169 NRW/BD, 2017 WL 2129906, at *2 (E.D. Ark. May 1, 2017). Restrictions on a detainee's mail must further an important governmental interest and must be no greater than is necessary to achieve that end. See Yang, 833 F.3d at 895 (citing Thornburgh v. Abbott, 490 U.S. 401, 415-16 (1989)); cf. Turner, 482 U.S. at 89 (prison regulations that impinge on an inmate's ability to communicate with others is valid so long as it is reasonably related to legitimate governmental objectives).

The investigation and prevention of ongoing illegal inmate activity constitute legitimate governmental objectives. United States v. Workman, 80 F.3d 688, 698-99 (2d Cir. 1996); United States v. Cook, 457 F. App'x 285, 286 (8th Cir. 2011) (unpublished per curiam) (citing Thornburgh, 490 U.S. at 411-12, Procunier, 416 U.S. at 412-13, and Workman, 80 F.3d at 698-99); cf. Dillhunt v. Theriault, No. 9:07-CV-0412, 2009 WL 4985477, at *9 (N.D.N.Y. Dec. 15, 2009) (no constitutional violation occurs when prison officials monitor mail for the purpose of ensuring order in the prison and preventing illegal activities).

In Missouri, a circuit attorney may, in the course of a criminal investigation, request that a circuit judge "issue a subpoena to any witness who may have information for the purpose of oral examination under oath to require the production of books, papers, records, or other material of any evidentiary nature at the office of the . . . circuit attorney requesting the subpoena." Mo. Rev. Stat. § 56.085 (authorizing circuit attorneys to obtain subpoenas *duces tecum* in the course of criminal investigations).

It is undisputed that Lyles and Fairless intercepted Plaintiff's mail and forwarded it to the Circuit Attorney's office because they believed the subpoena required them to do so. Lyles and Fairless believed that Plaintiff—who was confined at SLCJC pending trial on charges arising out of allegations he had committed multiple sex crimes against children—had been communicating with the victims of his alleged crimes and that he had received potentially inappropriate pictures. They received the subpoena—which was issued by the Circuit Attorney's office and directed them to produce Plaintiff's mail "while confined at SLCJC"—after SLCJC officials had reported their concerns about Plaintiff's mail activities to the Circuit Attorney's office. Against this factual background, the Court concludes that Lyles and Fairless reasonably interpreted the subpoena as directing them to produce to the Circuit Attorney's Office all of Plaintiff's incoming and outgoing mail during his confinement at SLCJC. Cf. Morton v. City of Little Rock, 934 F.2d 180, 184 (8th Cir. 1991) (officials who released plaintiff's expunged criminal records were entitled to qualified immunity where it was undisputed they produced the records only because they were required to do so by a subpoena).

The Court further concludes that Lyles and Fairless reasonably believed that they were under a continuing obligation to forward Plaintiff's mail after July 12, 2017, based on the

9

subpoena's directive that Plaintiff's incoming and outgoing mail be produced "while [he was] confined at" SLCJC. In light of the subpoena's prospective language, the Court concludes that Lyles and Fairless reasonably continued to forward Plaintiff's mail to the Circuit Attorney after July 17, 2012. Accordingly, the Court concludes that Lyles and Fairless are entitled to summary judgment on Plaintiff's claims against them in their individual capacities. See Peterson, 754 F.3d at 598.

## V. Plaintiff's Claims against Defendants in their Official Capacities

Defendants further argue that they are entitled to summary judgment on Plaintiff's claims against them in their official capacities, as he cannot establish that his rights were violated as a result of an unconstitutional SLCJC policy or custom (Doc. 84 at 6-8). The Court agrees that Defendants are entitled to summary judgment on Wagner's official-capacity claims. Suits against government officials in their official capacities are—in all respects other than name—treated as suits against the governmental entity. Baker v. Chisom, 501 F.3d 920, 925 (8th Cir. 2007) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985). In a § 1983 action, a local government may be held liable only if the plaintiff identifies a particular policy, custom, or practice that resulted in the alleged constitutional violations. Monell, 436 U.S. at 690-91; City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989); Ware v. Jackson Cty., Mo., 150 F.3d 873, 880 (8th Cir. 1998).

Here, Plaintiff has not identified any unconstitutional policy or custom pursuant to which Defendants intercepted his mail; to the contrary, he alleges his mail was intercepted in violation of SLCJC's established policy for processing inmate mail. Moreover, Plaintiff does not allege that Defendants had a custom of ignoring the SLCJC mail-processing policy, and it is undisputed

that none of the Defendants had policymaking authority. See City of St. Louis v. Praprotnik, 485 U.S. 112, 125 (1988) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."); Soltesz v. Rushmore Plaza Civic Center, 847 F.3d 941, 946-48 (8th Cir. 2017) (discussing sources of policymaking authority). Plaintiff's official-capacity claims also fail because, as discussed above, he has not created a genuine dispute of material fact in his underlying substantive claims. See McCoy v. City of Monticello, 411 F.3d 920, 922-23 (8th Cir. 2005) (to establish government liability, plaintiff must establish underlying substantive claim). The Court will therefore grant summary judgment in Defendants' favor on Plaintiff's claims against them in their official capacities.

## VI. Plaintiff's Motion for Return of PLRA Filing Fee

When Plaintiff initiated this civil action, he also sought leave to proceed in forma pauperis ("IFP"), which the Court granted (Docs. 2-3). The Court granted Plaintiff leave to proceed IFP, and directed him to pay an initial filing fee pursuant to 28 U.S.C. § 1915(b) (Doc. 5). After Plaintiff paid the initial fee, the Court directed the Missouri Department of Corrections ("MDOC") to begin forwarding monthly payments from Plaintiff's prison account until the balance of the filing fee is paid, pursuant to 28 U.S.C. § 1915(b)(2) (Doc. 20). Plaintiff has not yet paid the balance of the filing fee. In his Motion for Return of PLRA Filing Fee, Plaintiff asks the Court to direct the MDOC to reimburse him $103.28 which was forwarded to the Court from his inmate account on January 3, 2017 (Doc. 96). According to Plaintiff, the $103.28 represents 20% of $460.92 he received from a recent sale of stocks he purchased prior to his incarceration. In Plaintiff's view, MDOC improperly forwarded $103.28 from his account because the funds were proceeds from his sale of stock, and thus were not "income" as that term is used in

§ 1915(b)(2).

The Court disagrees. As relevant, § 1915(b)(2) provides that, after payment of the initial filing fee, a prisoner proceeding IFP shall be required to make monthly payments of twenty percent of the proceeding month's income credited to the prisoner's account. The term "income," as used in the PLRA, includes all deposits to an inmate's account. See Cosby v. Meadors, 351 F.3d 1324, 1326 (10th Cir. 2003) (defining "income" under § 1915(b) as including all deposits to an inmate's account); Lucien v. DeTella, 141 F.3d 773, 776 (7th Cir. 1998) (same). The Court therefore will deny the motion.

## VII.     Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 83) is **GRANTED** and this case is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Return of PLRA Filing Fee (Doc. 96) is **DENIED**.

Dated this 10th day of August, 2017.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE